Zupancic, Appellant, v. Snowden Township.

136

Argued October 5, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Louis Vaira,* for appellant.

*Owen B. McManus,* for appellees.

OPINION PER CURIAM, November 27, 1956:

The order dismissing the plaintiff's complaint in mandamus is affirmed on the following excerpts from the opinion of Judge KENNEDY for the court en banc.

The hearing judge "concluded that the plaintiff was not entitled to a judgment in mandamus commanding the defendant's supervisors to issue a permit to the plaintiff authorizing him to operate a garbage and rubbish disposal plant on certain properties within Snowden Township, and in an order dismissed the bill of complaint. . . .

"Based on the pleadings and the testimony submitted by the parties at the hearing, and the exhibits allowed in evidence, the sole issue to be decided was: Did the plaintiff, prior to bringing suit, hold a permit to operate a commercial garbage and rubbish disposal plant coupled with such a vested interest therein that it could not be revoked or rescinded by the Township supervisors?

"Ordinance No. 2 of Snowden Township, approved January 24, 1947, declared, *inter alia,* that it was unlawful as being a public nuisance for anyone to operate a commercial garbage and rubbish disposal plant without previous specific authorization from the supervisors. On May 18, 1954 the plaintiff submitted a written application for such an undertaking. On May 22, 1954 the secretary of the Board of Supervisors, in a letter, notified the plaintiff that the Board had agreed to authorize him to operate such a disposal dump using the sanitary fill method provided the plaintiff would agree with four rigid restrictions and limitations which were not incorporated in his written application. This letter further stated: '(5) A formal agreement listing these additions will be drawn up for your signature.'

"The plaintiff, even up to the time of trial, never notified the supervisors that he was desirous of obtaining a permit subject to the requirements, limitations and conditions set forth in the letter of May 22, 1954, and to therefore submit a formal agreement. The plaintiff, however, did invest considerable money in purchasing land from which the underlying coal had long since been mined out both by deep mining and strip mining processes. Considerable of the surface of this land had deep gorge-like ravines and ridges or peaks of earth as a result of the prior removal of the coal

and probably was adaptable for the disposal of commercial rubbish and garbage using the so-called sanitary fill method. The supervisors were never officially notified of the purchase of these lands although the chairman of the Board was an officer in the real estate company that negotiated for one of the tracts as representative of the plaintiff.

"As the result of a violent protest by a majority of the citizens of Snowden Township to the possible granting of a license and permit to the plaintiff to operate a commercial garbage and rubbish dump within its confines, the supervisors, on July 14, 1954, rescinded their motion of May 22, 1954 'to grant to Joseph Zupancic permission to operate a sanitary fill in the Township.' The hearing judge found that the personal knowledge of the chairman of the Board of Supervisors that the plaintiff had purchased a tract of minedout acreage was not official notice to the Board. He further found that the letter from the secretary of the Board, dated May 22, 1954, to the plaintiff, was not a permit or a license to operate a commercial refuse disposal dump, but only a proposal in the nature of negotiations that such a permit might be granted if the plaintiff was amenable to the restrictions, conditions and limitations set forth at large in the letter. Because the plaintiff had never signified his agreement to such conditions etc. it was therefore found that there never was a meeting of the minds of plaintiff and the Township authorities at the time that any prior negotiations leading up to the granting of a license was rescinded on July 14, 1954.

"Since no permit had been granted the hearing judge was correct in finding that the plaintiff had not proven a vested interest in a permit or license, even

though he had invested considerable money in purchasing the acreage referred to above. . . .

"In this proceeding the plaintiff was seeking a license to carry on an enterprise that had been declared by the Ordinance of the Township to be a public nuisance and unlawful. Such a permit could only be granted provided the applicant would be willing to agree to any restrictions imposed. The plaintiff never signified his willingness to submit to the additional requirements suggested by the supervisors as a condition precedent to their determination to grant a license. One of those conditions was that 'no vehicles other than those owned or rented by you shall use this dump to dispose of any garbage or rubbish.' This limitation would certainly substantially circumscribe the plaintiff's plan to operate a commercial garbage and rubbish disposal dump."

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

Plaintiff on May 18, 1954, pursuant to an ordinance of Snowden Township, made a written application to the Board of Supervisors for the operation of a garbage disposal project using the sanitary fill method. The Chairman of the Board collaborated with plaintiff in the preparation of his written application and presented it to a meeting of the Supervisors held on *May 22,* 1954. The Supervisors unanimously agreed to authorize plaintiff to operate this garbage disposal project in accordance with the provisions which were set forth in its letter to plaintiff's attorney dated May 22nd. These provisions were satisfactory to plaintiff and were to be embodied in a "formal" agreement to be prepared by the Supervisors. The testimony showed that the sole reason for the Supervisors' authorization

of May 22, 1954, was to assure plaintiff that he could proceed with the purchase of the two particular properties in question for the purpose of using them as a dump for disposal of the garbage.

The authorization or permit by Snowden Township was as follows:

"May 22, 1954

"Mr. Joseph Zupancic
Brownsville Road
Broughton, Pa.

"Dear Mr. Zupancic:

"At a special meeting of the Board of Supervisors held at the Township Building on Saturday, May 22, 1954, it was unanimously agreed *to authorize you to operate a garbage and rubbish disposal dump,** using the Sanitary Fill Method. This must be conducted in accordance with Township Ordinance No. 2 effective January 24, 1947 and additional requirement as follows:

"1. No vehicles other than those owned or rented by you shall use this dump to dispose of any garbage or rubbish.

"2. Special chemicals shall be used to eliminate rodents, flies, etc. and shall be applied in such a manner that it will not effect the surface on or surrounding this dump.

"3. All garbage and rubbish must be covered at least once a day with approximately three (3) feet of ground.

"4. A sketch naming boundaries of the land to be used must be submitted. (No survey necessary.)

"5. A formal agreement listing these additions will be drawn up for your signature.

---

* Italics, ours.

"*This letter is being written in order to avoid delay in your plans.**

"Enclosed please find a copy of Ordinance No. 2.
Yours very truly,
James A. Ross
Secretary."

Moreover, the Chairman of the Board informed the Keystone Mortgage Company, of which he was Treasurer, that a permit had been issued to plaintiff by the Supervisors for this project on May 22, 1954, and that it was proper for the Company to make a mortgage loan to plaintiff secured on the properties in question. This the Company proceeded to do.

Plaintiff on *May 24,* 1954, relying upon the Supervisor's authorization or permit of *May 22nd,* entered into a written agreement to purchase one of the properties for $5,000., and on *June 4,* 1954, entered into a written agreement to purchase the other property for $15,000. He paid $20,000. cash for the two properties on *July 6,* 1954, and received a deed for them, which was recorded on the *7th of July,* 1954. This very important point was completely overlooked by the majority. Although the properties were called abandoned farms they were actually abandoned coal pits or excavations, gorge-like in appearance, which were suitable only for a dump of some kind, such as a garbage disposal project. They were in a very remote section of the Township—for example, there were only two houses within two miles of these farms.

On July 7, 1954, the Board of Supervisors met to discuss the problem of rubbish disposal by the sanitary fill method. No notice of this meeting was given to plaintiff. At the meeting over 1100 residents protested

---

* Italics, ours.

the sanitary fill method. The Supervisors, as a result of those protests, held a meeting on *July 15,* 1954, and prohibited the dumping of garbage and rubbish within the boundaries of Snowden Township forever.

The *formal* agreement was never drawn up by the Supervisors for plaintiff's signature but plaintiff has acted in reliance upon and on the faith of the permit and is ready, willing and able to execute an agreement embodying all the terms of the permit. Defendant cannot take advantage of its own technical default or its own wrongdoing especially where as here the properties purchased by plaintiff for a garbage disposal dump are almost valueless for any other purpose.

The action of the Board in revoking the permit was arbitrary, unjust and illegal. Furthermore, the Board's action violated the plaintiff's constitutional rights which had become vested when he purchased the properties in good faith and in reliance upon the Board's authorization or permit: *Lower Merion Township v. Frankel,* 358 Pa. 430, 57 A. 2d 900; *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195.

*Herskovits v. Irwin,* 299 Pa., supra, is on its facts analogous to and rules the instant case. In that case a property owner was issued a permit for *the foundations* of a six-story apartment building. His plans and specifications for the building were approved. However, before a final building permit was issued as required by the ordinance, the zoning law was changed and the height of buildings was limited to three stories. The Court held that the builder's rights had become vested and that a revocation would be a violation of his Constitutional rights, and said: " 'Where a permit to build . . . has been acted upon and . . . the owner has . . . proceeded to incur obligations . . . in good faith . . . [his] rights are then vested, property rights,

[which are] protected by the federal and state constitutions.' "

For these reasons I would reverse the Order of the lower Court and issue a mandamus compelling the Supervisors to reinstate the permit originally granted to the plaintiff on May 22, 1954.

Mr. Chief Justice HORACE STERN and Mr. Justice MUSMANNO join in this dissenting opinion.